## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JASON FIERMAN,** | : | **Civil No. 1:15-CV-1427** |
| | : | |
| **Plaintiff** | : | **(Judge Jones)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **DEPUTY ATTORNEY GENERAL** | : | |
| **TIMOTHY DOHERTY, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION AND ORDER

### I.     Statement of Facts and of the Case

This federal civil rights action involves false arrest-malicious prosecution claims leveled by the plaintiff against state investigators and prosecutors. This civil case arises out of a criminal prosecution of the plaintiff, a criminal case which concluded with the acquittal of the plaintiff, a former county correctional officer, on state criminal charges. In the wake of this acquittal, Fierman, the state criminal defendant, has become a federal civil plaintiff, suing those officials who conducted and oversaw this investigation and prosecution.

This case now comes before us for resolution of a discovery dispute and motion to compel filed by the plaintiff. (Doc. 31.) That motion to compel, in turn, presents interesting legal questions regarding the interplay of the Federal Rules of Civil Procedure, which favor transparent disclosure of relevant information, and state laws

governing grand jury secrecy, which cloak matters occurring before the state grand jury in secrecy. As we discuss in greater detail below, in our judgment the resolution of this dispute requires a cooperative approach to discovery, one which recognizes the independence and prerogatives of the grand jury, appreciates the requirements of grand jury secrecy, but approaches grand jury disclosure issues in a thoughtful pragmatic fashion, with an understanding of the limited scope of grand jury secrecy, and with a common commitment to securing proper discovery disclosures consistent with the requirements of grand jury practice.

Briefly, the pertinent background of this dispute is as follows: The plaintiff, Jason Fierman, is a former Correctional Officer who was employed at the Luzerne County Correctional Facility. It is alleged that Fierman had a long, and contentious, relationship with defendant Timothy Doherty, a state Deputy Attorney General, and former Assistant District Attorney. Fierman alleges that this contentious relationship extended back to 2004 when Doherty lodged arson charges against Fierman, charges which were later dismissed. Following this dismissal of this state criminal case, Fierman brought a false arrest civil rights lawsuit against Doherty, which was resolved in 2009.

This past, marked by an unsuccessful criminal prosecution coupled with a civil false arrest lawsuit, set the stage for the current litigation which is also defined by an

unsuccessful criminal prosecution followed by a civil rights false arrest/malicious prosecution lawsuit.

Specifically, it is alleged that the defendants, under the supervision and direction of Defendant Doherty, conducted an investigation into alleged drug trafficking at the Luzerne County Correctional Facility which resulted in a grand jury presentiment that recommended that charges be filed against Fierman, and several other prison employees. According to the plaintiff's amended complaint, there were numerous irregularities in the conduct of the grand jury proceedings, inaccurate information was provided to the grand jury and exculpatory information possessed by prosecutors was suppressed. (Doc. 8, ¶42a-n.) Fierman was then charged with conspiracy, delivery and possession of controlled substances. The Commonwealth's case against Fierman proceeded to trial in June 2013, and at the conclusion of the trial Fierman was acquitted of all charges. According to Fierman's amended complaint, as the case proceeded to trial several grand jury witnesses recanted their testimony, alleging that they had been pressured into making false statements implicating Fierman in this conduct. (Doc. 8, ¶¶50-61.)

This federal civil rights false arrest-malicious prosecution then ensued. (Doc. 1 and 8.) Recognizing that any merits consideration of these civil claims will necessarily involve an assessment of the evidence in this state criminal case, the

parties have engaged in discovery aimed at gathering an informed understanding of the factual basis for these charges. The plaintiff initially sought this information in April 2016 through a series of broadly cast interrogatories and requests for production of evidence. (Doc. 31-2.) When the defendants objected to these discovery demands, in part, because the discovery demands implicated state grand jury secrecy, the plaintiff tempered his requests, and sought only that information in the possession of the defendants which was not encompassed by state grand jury secrecy rules. Despite this limiting guidance from plaintiff's counsel, the defendants have declined to produce any information relating to this investigation and prosecution citing grand jury secrecy. Indeed, the defendants' approach to this matter has been absolute. It is reported that the defendants also refuse to provide their own counsel in this civil lawsuit with any access to the factual details underlying this investigation and prosecution citing grand jury secrecy.

While the defendants have reportedly adopted this absolute and across-the-board view precluding any access by either counsel to this factual information, it is also represented that the defendants would not object if plaintiff's counsel sought disclosure of this information from the state grand jury supervising judge. Although this much is conceded by the defendants what is less clear is how defense counsel in this civil litigation could then get access to this information which is being withheld

4

from their own counsel by the defendants. Therefore, while the defendants' agreement not to object to a state grand jury disclosure to the plaintiff is an appropriate starting point in resolving these concerns, we believe that more may be necessary and proper here. It is against this backdrop that the plaintiff filed a motion to compel discovery in this case. (Doc. 31.) This motion was then referred to the undersigned, and following a conference with counsel we agreed to issue the following order which provides a framework for the resolution of this discovery dispute.

## II.   Discussion

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

> (a) Motion for an Order Compelling Disclosure or Discovery
>
> (1) In General. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . .

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26 of the Federal Rules of Civil Procedure. Fed. R. Civ. P., Rule 26(b)(1), which provides that:

> Unless otherwise limited by court order, the scope of discovery is as

5

follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

 Fed. R. Civ. P., Rule 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Therefore, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

District courts provide magistrate judges with particularly broad

discretion in resolving discovery disputes. <u>See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc.</u>, 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." <u>Saldi v. Paul Revere Life Ins. Co.</u>, 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing <u>Scott Paper Co. v. United States</u>, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." <u>Kresefky v. Panasonic Commc'ns and Sys. Co.</u>, 169 F.R.D. 54, 64 (D.N.J.1996); <u>see also Hasbrouck v. BankAmerica Hous. Servs.</u>, 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); <u>EEOC v. Mr. Gold, Inc.</u>, 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

<u>Halsey v. Pfeiffer</u>, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches nonprivileged matter that is relevant to any party's claim or defense. Therefore, valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information  a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Rather, "[p]arties may obtain discovery regarding any nonprivileged matter that is

relevant to any party's claim or defense."

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D.Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009). Likewise, "[i]n deciding whether a federal privilege against discovery exists, plaintiffs as the objecting party have the burden of establishing the privilege." Bayges v. Se. Pennsylvania Transp. Auth., 144 F.R.D. 269, 271 (E.D. Pa. 1992).Indeed, because the assertion of a claim of privilege "may result in the withholding of relevant information and so may obstruct the search for truth," In re Chevron Corp., 633 F.3d 153, 164 (3d Cir. 2011), it is well-established that, " 'The burden of proving that the . . . privilege applies is placed upon the party asserting the privilege.' United States v. Landof, 591 F.2d 36, 38 (9th Cir. 1978)." Matter of Grand Jury Empanelled February 14, 1978, 603 F.2d 469, 474 (3d Cir. 1979).

At the outset, in this case it is clear that the plaintiff has made a threshold

showing of relevance. The plaintiff's complaint brings federal civil rights, malicious prosecution and false arrest claims against the defendants. These claims implicate Fierman's rights under  the Fourth Amendment to the United States Constitution, which provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and now Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV.  Under the Fourth Amendment, an arrest without probable cause is a constitutional violation that may be redressed under 42 U.S.C. § 1983.  See Walmsley v. Philadelphia, 872 F.2d 546, 551 (3d Cir. 1989) (citing Patzig v. O'Neill, 577 F.2d 841, 848 (3d Cir. 1978).  However, in order to make out a false arrest claim, a plaintiff must demonstrate that police lacked probable cause to arrest.  Groman v. Twp. of Manalpan, 47 F.3d 628, 634 (3d Cir. 1995). Similarly:

> To prove malicious prosecution under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) *the proceeding was initiated without probable cause*; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)(emphasis added).

Thus, whether characterized as a false arrest, or couched in terms of malicious

prosecution, proof that probable cause was lacking is essential to any §1983 claim arising out of the arrest and prosecution of an individual.  For purposes of the Fourth Amendment, probable cause to arrest exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." U.S. v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)).

Here, Fierman has alleged that there were numerous irregularities in the conduct of the grand jury proceedings, inaccurate information was provided to the grand jury and exculpatory information possessed by prosecutors was suppressed. (Doc. 8, ¶42a-n.). According to Fierman's amended complaint, as the case proceeded to trial several grand jury witnesses recanted their testimony, alleging that they had been pressured into making false statements implicating Fierman in this conduct during the grand jury investigation. (Doc. 8, ¶¶50-61.) The Commonwealth's case against Fierman proceeded to trial in June 2013, and at the conclusion of the trial Fierman was acquitted of all charges. Thus, Fierman has alleged specific and articulable facts which place the conduct of this investigation at issue, and raise questions concerning whether the defendants proceeded with this case even though they lacked probable cause. In this context the factual and evidentiary basis for these charges is clearly a matter

which is relevant to the plaintiff's claims.

Likewise, the factual basis for these charges is a matter which is directly relevant to the defense of this case. In their answer, the defendants have asserted the affirmative defense of qualified immunity in this case. (Doc. 13.) This affirmative defense also calls for an examination of the factual background of this investigation since oftentimes: "[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff)." Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996).

Thus, the issues in this case seem to squarely call for a thorough consideration of the underlying facts in this investigation, both from the plaintiff's perspective and from the perspective of the defendants. Yet, these legitimate civil discovery needs for all parties to gain an understanding of the factual background of this criminal case encounter a significant legal hurdle, imposed by state law and grounded in traditional, longstanding considerations of grand jury practice and procedure–state grand jury secrecy.

Consistent with these general principles of grand jury secrecy Pennsylvania law forbids unauthorized: "[d]isclosure of matters occurring before the grand jury," 42 Pa. C.S. § 4549 (b), a term which is not otherwise defined by state law but a phrase

which mirrors the language of the federal grand jury secrecy rule, Rule 6(e) of the Federal Rules of Criminal Procedure.  Where state criminal investigative matters are cloaked in grand jury secrecy, they may not be unilaterally disclosed by the Commonwealth, but may be disclosed upon proper application by order of the supervising judge of the state grand jury. See Pa. R.Crim. P. Rule 230(C).

Therefore, when examining federal civil discovery disputes which implicate state grand jury secrecy concerns, considerations of federalism and comity caution against federal courts substituting their judgment for the judgment of any state grand jury supervising judge in making disclosure decisions in this arena. Therefore, when considering questions concerning the release of information regarding matters occurring before the state grand jury, we are cautioned in the first instance to defer to the state courts when addressing state grand jury disclosure issues. See e.g., Camiolo v. State Farm Fire & Cas. Co., 334 F.3d 345, 348 (3d Cir. 2003); Anilao v. Spota, 918 F.Supp2d. 157 (E.D.N.Y. 2013). In this setting "the district court should direct the requesting party to *first* apply pursuant to applicable state statutes or procedural rules to the appropriate state judicial officer"" Camiolo v. State Farm Fire & Cas. Co., 334 F.3d 345, 359 (3d Cir. 2003)(emphasis in original).

However, these proscription under state law only apply to "matters occurring before the grand jury." 42 Pa. C.S. § 4549 (b). While this term is not defined by state

law, this phrase mirrors the language of the federal grand jury secrecy rule, Rule 6(e) of the Federal Rules of Criminal Procedure, and state courts have looked to federal case law to give meaning to the scope and reach of this term. See In re Cty. Investigating Grand Jury VIII, 2003, No. 03 MISC 140, 2005 WL 3985351, at *14 (Pa. Com. Pl. Oct. 25, 2005)(citing Com. v. Wecht, 20 D. & C.3d 627, 639 (Alleg.Co.1981).  Federal cases construing the grand jury secrecy rule have held that matters occurring before the grand jury do not include ministerial information like the commencement and termination dates of the grand jury. In re Grand Jury Investigation, 903 F.2d 180, 182 (3d Cir. 1990). Likewise, documents and records, or reports of interview, which have an existence independent of the grand jury are not automatically cloaked in grand jury secrecy. For example, "materials obtained in the course of the [agent's] investigation of possible unlawful activity, including tape recordings and transcripts of consensually monitored conversations, [agency reports of interviews], documents obtained without grand jury subpoena, and a prosecution memorandum summarizing the information compiled by the FBI investigation," have been held not to constitute matters occurring before the grand jury. See In re Grand Jury Matter, 682 F.2d 61, 64 (3d Cir. 1982). Therefore, it is clear that "matters occurring before the grand jury" do not embrace all investigative materials and many documents, exhibits, records and reports of interview may fall beyond the ambit of

13

grand jury secrecy.

Similarly, in some instances, it appears that plaintiff's discovery demands seek confirmation that certain information does not exist. For example, some of the plaintiff's discovery demands appear to seek confirmation that there are no prison surveillance videos that document illicit drug transactions by Fierman. To the extent that the discovery demands seeks confirmation that something did not occur; i.e., the videotaping of drug transactions inside the county jail, it is difficult to see how an event which *did not occur* could be a matter *occurring* before the grand jury.

These limitations on the grand jury secrecy rule are important in this case since the plaintiffs have expressed a clear intention to limit their discovery demands initially to information which is not encompassed by grand jury secrecy. Thus, to the extent that the plaintiff now seeks only non-grand jury investigative information, the defendants may not respond by simply and reflexively asserting grand jury secrecy. Instead, we believe it is incumbent upon the defendants to ascertain: (1) whether they possess any responsive information; (2) whether that information falls outside the ambit of grand jury secrecy because it does not constitute "matters occurring before the grand jury" as that terms is construed by the courts; and (3) then make proper disclosure of any non-grand jury information while compiling a privilege log of that information which may be responsive to the discovery demands but which the

14

defendants believe is encompassed by grand jury secrecy, or otherwise privileged.

At the same time we agree that requests for disclosure of state grand jury information should, in the first instance, be directed to the state grand jury supervising judge. In considering this aspect of discovery disclosure in this litigation, we urge the parties to recognize that it is in their combined interest to pursue a joint, and measured, approach to seeking such grand jury disclosure. A joint application by the parties to the state grand jury supervising judge would allow the parties to frame appropriate protective orders for any disclosure, and would ensure that both the plaintiff's counsel and counsel for the defendants have equal access to this information, information which will be critical to the prosecution and defense of this lawsuit.

Further, we note that many of the considerations which inform state grand jury secrecy seem to have only limited application in this case. Pennsylvania courts acknowledge five policies served by grand jury secrecy. These policies are:

> (1) [t]o prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no

probability of guilt.

In re Dauphin Cty. Fourth Investigating Grand Jury, 610 Pa. 296, 316–17, 19 A.3d
491, 503 (2011).

In this setting, where we are considering a civil lawsuit filed following the
plaintiff's acquittal on state criminal charges, many of these policy concerns have little
or no application. For example, we no longer need to be concerned about Fierman's
escape or flight. Fierman has not fled. He has faced these charges and gained an
acquittal. Similarly, the fear of obstruction of justice before the grand jury or improper
importuning of grand jurors is minimal since the grand jury has long since completed
its work in this investigation, and the case has been tried to an acquittal. Finally,
continued grand jury secrecy would not protect an innocent accused who is exonerated
from disclosure of the fact that he has been under investigation, and from the expense
of standing trial where there was no probability of guilt. Fierman was charged. He
faced disclosures of this investigation during his prosecution and has already
experienced the reputational harm which this rule of secrecy is designed to avoid.

Yet, while these factors favoring continued secrecy have limited application
here, the plaintiff's allegations of misconduct and recanted testimony, and the
defendants' need for a more fulsome disclosure of the factual basis for these charges,
all weigh in favor of a measured, joint disclosure of some investigative information
to the parties, and counsel, in this litigation subject to appropriate protective orders

16

limiting the use and later disclosure of any information which may be released. Indeed, such disclosure would seem from the perspective of all parties to be essential to any informed understanding of the critical legal issue in this case– whether the defendants possessed probable cause to charge Fierman.

### III.   Order

In recognition of these considerations, we will direct that the parties engage in the following approach to the discovery issues raised in this motion to compel, an approach which will enable an informed assessment of what may, and may not, be encompassed by state grand jury secrecy, permit the disclosure of non-grand jury investigative information, compile a privilege log relating to other investigative information which may fall within the ambit of state grand jury secrecy, and prescribe a path for resolution of state grand jury secrecy questions in the manner prescribed by the federal courts by "direct[ing] the requesting party to *first* apply pursuant to applicable state statutes or procedural rules to the appropriate state judicial officer"" Camiolo v. State Farm Fire & Cas. Co., 334 F.3d 345, 359 (3d Cir. 2003)(emphasis in original) Accordingly, in accordance with the foregoing Memorandum, IT IS ORDERED that the plaintiff's motion to compel (Doc. 31), is GRANTED, in part, as follows:

1.    On or before **December 19, 2016**, the defendants shall review the

17

investigative files relating to the prosecution of the plaintiff and: (1) ascertain whether they possess any information which is responsive to the plaintiff's discovery demands; (2) determine whether that information falls outside the ambit of grand jury secrecy because it does not constitute a matter occurring before the grand jury; and (3) then make proper disclosure of any non-grand jury information while compiling a privilege log of that information which may be responsive to the discovery demands but which the defendants believe is encompassed by grand jury secrecy, or any other privilege.

2.    On or before **December 19, 2016**, the parties shall meet and confer with an eye towards endeavoring to determine whether the parties may file a joint motion with the state grand jury supervising judge seeking disclosure of remaining and responsive grand jury information subject to appropriate protective orders for any disclosure which would ensure that both the plaintiff's counsel and counsel for the defendants have equal access to this information, information which will be critical to the prosecution and defense of this lawsuit.

3.    If the parties are unable to agree on a joint motion, then on or before **December 19, 2016**, we direct the plaintiff as the requesting party "to

*first* apply pursuant to applicable state statutes or procedural rules to the appropriate state judicial officer" <u>Camiolo v. State Farm Fire & Cas. Co.</u>, 334 F.3d 345, 359 (3d Cir. 2003)(emphasis in original). In accordance with the representations made to this court, it should be noted that the defendants do not oppose this disclosure.

4.     On or before **January 5, 2017**, the parties shall report to the court if any unresolved discovery issues remain in this case which need to be addressed.

So ordered this 22d day of November 2016.


<u>S/Martin C.  Carlson</u>
Martin C. Carlson
United States Magistrate Judge